

*U.S. Department of Justice*

*United States Attorney*
*Eastern District of New York*

BJC:CAC  
F.#2010R00897

*271 Cadman Plaza East*
*Brooklyn, New York  11201*

September 10, 2010

**BY HAND DELIVERY AND ECF**

The Honorable Jack B. Weinstein
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

>    Re: United States v. Lior Hanuka and John Micali,
>        Criminal Docket No. 10-361 (JBW)

   Trial in the above matter is scheduled for October 4, 2010.  The indictment charges the defendants with one count of conspiracy to possess with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841 and 846, and one count of attempting to possess marijuana with intent to distribute, in violation of 21 U.S.C. § 841(b)(1)(C) and 846.

   The government respectfully submits the following motion, pursuant to Fed. R. Evid. 404(b), to admit evidence at trial of the defendant John Micali's (the "defendant" or "Micali") prior drug offenses and drug use.  Through his motion to dismiss the indictment, the defendant has put the question of his knowledge and intent squarely at issue.  Therefore, evidence of the defendant's prior drug offenses is relevant and probative to demonstrate that the defendant knew that he was dealing in narcotics and that he had the specific intent to participate in the charged scheme.  Accordingly, as set forth more fully below, the government's motion should be granted.

I. <u>Facts</u>

   On February 16, 2010, at approximately 12:22 p.m., an Illinois State Trooper stopped an individual for speeding on Interstate 80 in Henry County, Illinois.  The individual was driving a pick-up truck pulling an enclosed box trailer.  During

a canine sniff, a drug dog alerted the State Trooper to the odor of illegal narcotics.  A search of the trailer revealed approximately 197 pounds of marijuana hidden inside three sofas.

The individual ("CW") who was stopped subsequently agreed to cooperate with law enforcement in a controlled delivery attempt in New York.  While en route to New York, the CW received a call from an individual who identified himself as "Brooklyn."  During a recorded telephone conversation, "Brooklyn" advised the CW to drive to the parking lot of a Target store in Staten Island, New York, where a man driving a U-Haul truck would meet him.  "Brooklyn" further advised the CW that the man in the U-Haul would then take the CW to another location a short distance away to remove the drugs, which they referred to indirectly.

On February 17, 2010 at approximately 8:00 p.m., during another recorded call, the CW told "Brooklyn" that he had arrived at the parking lot of the Target store in Staten Island.  "Brooklyn" asked the CW to pull to the front of the store, but the CW said that it was better if he stayed where he was due to the size of the trailer.  "Brooklyn" told the CW that the U-Haul would be there shortly.  Approximately eight minutes later, at 8:08 p.m., a U-Haul truck driven by the defendant, John Micali, pulled up next to the CW's vehicle.  In a recorded conversation, Micali told the CW to follow him to a driveway about five minutes away where a shed was located.  Micali further explained that he would pull in first and then help the CW back the trailer in.  The CW proceeded to follow Micali along Arthur Kill Road in Staten Island until Micali abruptly made a sharp u-turn and accelerated rapidly in an attempt to leave the area.  Because the CW was driving a large trailer carrying the marijuana-laden couches, he could not follow Micali and was told by law enforcement to stop.  Micali was arrested a short time later a short distance away in the U-Haul with a number of recently purchased items, including several laundry bags, plastic bags, a crow bar, lanterns and a flashlight.

Micali's arrest in this case occurred the night prior to the defendant's first status conference in <u>United States v. Buonincontri, Micali and Nunziata</u>, 10-cr-005 (NGG), where the defendant is charged with conspiracy to steal cargo in violation of 18 U.S.C. § 659.  That case is currently pending.  The defendant was on supervised release when he was arrested in connection with the stolen cargo case and at the time of his arrest in the instant case.

II.  Criminal History

The defendant has a lengthy criminal history, including one state misdemeanor conviction, two federal felony convictions and two convictions for violating supervised release.

On January 14, 1994, Micali was convicted in the Eastern District of New York of conspiracy to distribute cocaine. The arrest leading up to that conviction occurred on March 4, 1993.  At that time, Micali was released on a $250,000 bond secured by property.  While on pretrial release, on July 3, 1993, Micali was arrested in Kings County, New York and charged with grand larceny in the third degree, criminal possession of stolen property in the third degree and unauthorized use of a vehicle. When questioned about the incident, the defendant offered New York City Police ("NYPD") officers $1,000 to forget the arrest. On November 23, 1993, Micali was convicted in Kings County, New York on a misdemeanor charge of compounding a crime in connection with his arrest on July 3, 1993 and was sentenced to three years probation.  Micali was subsequently sentenced to 30 months imprisonment and three years supervised release for the cocaine conspiracy conviction.  He was released from prison on March 22, 1996.

Following his 30 month prison term, a Violation of Supervised Release was filed against Micali on June 11, 1997 (the "1997 Violation").  The 1997 Violation was based on Micali's arrest on May 19, 1997 in Springfield, Massachusetts.  The arrest occurred after Micali was stopped by police because his vehicle matched the description of a vehicle used in a string of Automated Teller Machine (ATM) burglaries.  The police found burglary tools inside Micali's car.  Thereafter, on June 11, 1997, the Massachusetts state police in conjunction with the NYPD executed a search warrant at Micali's residence and recovered approximately one pound of marijuana and two tablets of Valium. Micali ultimately pled guilty to three of the six charges against him, including Possession of Marihuana.  On November 26, 1997, Micali was sentenced to eight months custody, followed by twenty-six months supervised release.

On September 2, 1998, the defendant was released from custody.  While on supervised release, the defendant tested positive for marijuana use during random drug tests on August 31, 1998 and May 27, 1999.  On April 27, 2000, a Violation of Supervised Release was filed charging the defendant with new criminal conduct stemming from an incident in Jefferson City, Tennessee (the "2000 Violation").  There, the defendant was stopped by police and found to be in possession of a police

3

scanner, walkie talkies, a cellular phone, black gloves, face masks and maps showing the locations of five shopping malls. An associate of the defendant's was stopped in a separate vehicle and found to be in possession of 3 pry bars, 2 large hooks, 1 pair of pliers, a black face mask, a screwdriver, 3 chisels, black gloves, adhesive paste, and a cellular phone. On November 28, 2000, the defendant was sentenced for violating supervised release to nine months custody with no supervision to follow.

On September, 17, 2003, the defendant was arrested in connection with the burglaries of 14 banks and the attempts to burglarize nine banks with members of the Night Drop Crew, a criminal enterprise that has direct ties to organized crime, specifically the Gambino and Colombo Families, and is responsible for significant and violent criminal activity spanning almost a decade. The conduct stretched from November 1993 through August 28, 2003, part of which occurred while the defendant was on supervised release. The defendant was subsequently indicted in a thirty-three count indictment with racketeering and racketeering conspiracy charges, including predicate acts of bank robbery, attempted bank robbery, interstate transportation of stolen money and money laundering. United States v. Edmond Boyle, et al., Cr. No. 03-970 (SJ). Micali pled guilty to count one (racketeering) and count three (bank robbery conspiracy). He was subsequently sentenced to 51 months imprisonment and three years supervised release.

III. Discussion

A. Legal Standard

Evidence of uncharged crimes, wrongs, or acts are admissible during the government's case-in-chief where relevant to the issues of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. See Fed. R. Evid. 404(b); see also United States v. Ortiz, 857 F.2d 900, 903 (2d Cir. 1988) (holding that because the "defense apparently refused to concede intent altogether"..."the district court would have been justified in allowing the prior conviction into evidence"). Under the Second Circuit's "inclusionary" approach to Rule 404(b), such evidence is admissible except where offered to prove the defendant's bad character or propensity, or where any unfair prejudice substantially outweighs the probative value of the evidence under Rule 403. See, e.g., United States v. Pascarella, 84 F.3d 61, 69 (2d Cir. 1996); United States v. Pitre, 960 F.2d 1112, 1119 (2d Cir. 1992).

B.   Analysis

The defendant's prior conviction for conspiracy to distribute crack cocaine, his marijuana possession conviction and his marijuana use are particularly relevant and probative to demonstrate that the defendant was aware of the nature of the drug conspiracy in which he was involved, that he was not at the scene with the CW by accident and that he had the specific intent to transfer the marijuana out of the CW's truck and into the defendant's U-Haul.  The evidence concerning defendant's past crimes will serve to rebut any claims by the defendant – such as those made in his motion to dismiss – that he was innocently associating with the CW, or that he merely intended to transfer couches to the U-Haul without knowledge of the drugs hidden within.

Indeed, it is well-settled that in narcotics cases such as the instant case, evidence of prior narcotics transactions regularly is admitted to prove the defendant's intent during the charged offenses. See United States v. Martino, 759 F.2d 998, 1004-05 (2d Cir. 1985) (admitting narcotics conviction to show intent to participate in conspiracy); United States v. Garcia, 291 F.3d 127, 136 (2d Cir. 2001); at 137 ("Knowledge and intent are permissible purposes for which courts can admit evidence of prior acts." United States v. Paulino, 445 F.3d 211, 221-22 (2d Cir. 2006) (prior narcotics conviction admissible to prove knowledge and intent where defendant challenged constructive possession of narcotics found in his closet); Pitre, 960 F.2d at 1119-20 (admitting prior narcotics offenses, inter alia, to establish knowledge and intent); United States v. Santiago, 199 F. Supp.2d 101, 109-110 (S.D.N.Y. 2002) (defendant's "involvement in a prior narcotics transaction is probative of his intent or knowledge in connection with the charged conspiracy," especially to rebut his claim of innocent association with individuals in the area where the conspiracy operated); United States v. Garcia-Montalvo, 885 F. Supp. 99, 100-01 (S.D.N.Y. 1995) (admitting circumstances of narcotics conviction to establish knowledge).  Accordingly, it is proper to admit the evidence of the defendant's prior drug convictions and drug use to rebut the defendant's claim that he did not intend to commit the crimes charged.

This case in particular strongly favors the admission of this 404(b) evidence because the defendant, through his pretrial motion to dismiss the indictment, has put the issue of his intent to commit the crimes charged directly at issue.  See Defendant's Memorandum in Support of his Motion to Dismiss the Indictment ("Def. Mot.").  The government is not speculating as

5

to what the defendant may argue because the defendant's arguments are plainly set forth in his motion to dismiss. For example, the defendant specifically contends that the "crucial element, Micali's specific intent to violate the substantive statute, i.e., to possess and/or to distribute marijuana, or indeed any drug, cannot be proved beyond a reasonable doubt." See Def. Mem. at 5. Even more to the point, the defendant invited the very evidence the government seeks to admit by erroneously claiming that there is no "evidence that Micali ever participated in any other drug transaction." Id.[1]

The Second Circuit has held that such evidence should be admitted to prove the defendant's intent and knowledge when, as in the present case, the defendant has squarely put his intent and knowledge at issue. See United States v. Martino, 759 F.2d 998, 1004 (2d Cir. 1985) (when defendant denied that he had knowledge or intent regarding the drug transaction, he "squarely placed in issue whether he possessed the requisite knowledge or intent to demonstrate his participation in the conspiracy charged."); United States v. Williams, 577 F.2d 188, 192 (2d Cir.)(the evidence of appellant's prior conviction was probative of his intent because it tended to "show that the [defendant] was not just sitting around talking wild stories, that (he) really did intend to carry out a robbery . . . ."); United States v. Zackson, 12 F.3d 1128, 1183 (2d Cir. 1993) (where the defense of lack of intent is apparent from the outset of the trial, it is proper to allow the government to introduce Rule 404(b) evidence in its case-in-chief). Accordingly, because the defendant has raised the issue of proof as to the defendant's intent, evidence of his involvement in other drug crimes is relevant and probative.

---

[1] While the government does not have to prove that the defendant knew that the narcotics involved were specifically marijuana, or that there was a marijuana odor that the defendant would have recognized, the defendant argued in his motion to dismiss that it would be "the grossest of speculations to find that Micali recognized that odor to be of marijuana in the absence of any evidence that he was familiar with marijuana and/or its odor." Def. Mot. at 9. The fact that the defendant was found in possession of one pound of marijuana at his residence and tested positive for marijuana use on two occasions in the late 1990s demonstrates that he is familiar with marijuana and its odor, and that no "gross speculation" is necessary.

6

The case of <u>United States v. Martino</u>, mentioned above, is particularly compelling as its factual setting is very similar to this case.  In <u>Martino</u>, the defendant was convicted of conspiracy to distribute heroin.  759 F.2d at 1000.  There, the drug transaction took place at a shopping center.  <u>Id</u>. at 1001-1002.  Like the defendant Micali, the <u>Martino</u> defendant did not deny his presence at the shopping center, but he did deny that he had knowledge of, or intent to participate in, the drug transaction.  <u>Id</u>. at 1004.  The Second Circuit held that the defendant placed at issue his presence at the shopping center, because he argued that it was "mere presence" and nothing more.  <u>Id</u>. at 1005.  The court held that "since a showing of knowledge and intent were essential in order for the government to meet its burden of proof in this case, and since the prior conviction of federal narcotics offenses was evidence which could be interpreted by the fact finders as shedding light on the key issues, the evidence was both relevant and probative and the trial judge did not abuse his discretion by his ruling, despite the vintage of the conviction."  <u>Id</u>. (citing <u>United States v. Terry</u>, 702 F.2d 299, 316 (2d Cir. 1983) (20-year-old drug conviction would have been admissible as bearing on knowledge and intent), <u>cert</u>. <u>denied</u>, 461 U.S. 931 (1983); <u>United States v. Alessi</u>, 638 F.2d 466, 476 (2d Cir.1980) (1972 conviction for similar offense admitted as bearing on intent)).

Here, the defendant asserts the same defense as the defendant in <u>Martino</u>.  759 F.2d at 1004-1005.  Micali claims that he was innocently at the Target store parking lot, and that he had no idea that the CW was carrying drugs.  In support of those claims, the defendant argues that there is no evidence that he spoke with any co-conspirator or that he was aware that the CW was a drug courier. Def. Mot. at 6.  Thus, the defendant's prior drug convictions and drug use, as in <u>Martino</u>, is probative of the issue of whether or not the defendant knowingly intended to engage in a drug transaction with the CW.  <u>Id</u>. at 1005.  Therefore, the drug offenses in the instant case should also be admitted.  <u>See</u> <u>also</u> <u>United States v. Gadsen</u>, 300 Fed. Appx. 108, 110 (2d Cir. 2008) (Testimony about prior drug sales may be used to establish "knowledge" and "intent" where the defendant repeatedly raises a "mere presence" defense, as that defense fails to make a "statement to the court of sufficient clarity to indicate that the issue[s] [of knowledge or intent] will not be disputed"); <u>United States v. Colon</u>, 880 F.2d 650, 659 (2d Cir. 1989) (prior drug crimes admissible where defendant raises "mere presence" defense, or fails to make a "statement to the court of sufficient clarity to indicate that the issue[s] [of knowledge or intent] will not be disputed"); <u>see</u> <u>also</u> <u>United States v. Bruno</u>, 873 F.2d 555, 561-62 (2d Cir. 1989) (defendant's claim of "mere

presence" during a drug transaction warranted introduction of Rule 404(b) evidence).

The defendant's prior drug offenses are also relevant to demonstrate that the defendant purposefully made a u-turn and sped away from the CW because he realized law enforcement was involved. In his motion to dismiss, the defendant characterizes his sudden departure as innocuous by stating that he made an "easy u-turn and proceeded in the direction of his home while the individual driving the pick-up continued on a different direction." Def. Mot. at 5. But the defendant's prior drug convictions demonstrate that the defendant knew exactly what he was doing when he made a sharp u-turn and fled the area. His experience with law enforcement, through his drug convictions, also serves to counter the argument that the defendant was innocently on his way home.

Furthermore, the probative value of the evidence sought to be admitted here outweighs any danger of unfair prejudice. The prior offense conduct is no more sensational or disturbing than the charges in the instant case. The prior cocaine conspiracy was the same type of crime as the one charged in this case, namely that the defendant had an agreement with others to distribute drugs. And the prior marijuana conviction only involved one pound of marijuana, whereas the instant case involves 197 pounds. See Pitre, 960 F.2d at 1120 (admitting evidence of prior narcotics transaction and noting that it "did not involve conduct any more sensational or disturbing than the crimes with which the appellants were charged"); United States v. Roldan-Zapata, 916 F.2d 795, 802 (2d Cir. 1990) (evidence admissible where it is of the same character and quality as the charged offense); Santiago, 199 F. Supp.2d at 110. Indeed, the marijuana conviction – which involves the same drug at issue in the instant case – is particularly relevant here to the question of the defendant's motive, intent and knowledge. Therefore, in light of the overwhelming probative value of the evidence (as set forth above) and the fact that the prior offenses are of the same character, the evidence should be admitted.

Finally, any possible unfair prejudice can be eliminated through a limiting instruction and, if necessary, a stipulation. United States v. Mickens, 926 F.2d 1323, 1328-29 (2d Cir. 1991); United States v. Levy, 731 F.2d 997, 1002 (2d Cir. 1984). The evidence, therefore, should be admitted during the government's case-in-chief.[2]

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney
Eastern District of New York

By:        /s/
       Celia A. Cohen
       Assistant U.S. Attorney
       (718) 254-6147

cc:  Albert Y. Dayan (By ECF)
     Clerk of the Court (By ECF)(JBW)

---

[2] As noted, the defendant has a lengthy criminal history involving, among other crimes, robbery and burglary. The government is not currently seeking to admit evidence concerning these crimes under Rule 404(b), but it does reserve the right to seek to impeach the defendant under Rule 609 for his conviction fo one or more felonies should he choose to testify at trial. See F.R.E. Rule 609.

9